COMMONWEALTH vs. RILEY J. POPE.

Worcester. March 5, 1984. — July 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Motion to dismiss,
   Request for fees and costs, Severance, Examination of jurors, Seques-
   tration of witnesses. *Constitutional Law,* Assistance of counsel. *Jury
   and Jurors. Grand Jury.*

A judge properly denied a criminal defendant's motion for a new trial based
   on alleged illegalities in jury selection procedures where, as to the selec-
   tion of petit jurors, the issues sought to be raised had not been presented
   in a timely manner by a pretrial motion and, as to the selection of grand
   jurors, the material placed before the judge did not substantiate the
   defendant's allegations. [497-498]
A criminal defendant made no showing that his attorney's alleged failure
   adequately to present his claim of illegal jury selection procedures de-
   prived him of an otherwise available, substantial ground of defense.
   [498-500]
A pretrial motion to dismiss, based upon alleged illegalities in grand jury
   selection procedure, which was unaccompanied by an affidavit or a
   memorandum of law as required by Mass. R. Crim. P. 13 (a), was
   properly denied without an evidentiary hearing. [500-501]
The judge in a criminal case correctly denied the defendant's posttrial motion
   for appointment of a master for the purpose of investigating jury selection
   procedures, inasmuch as such an investigation could not properly be
   initiated after the trial. [501-502]
There was no abuse of discretion in a judge's denial of a defendant's motion
   for separate trials on indictments charging sexual offenses as to four
   different women where the information before the judge at the time he
   ruled on the motion was that the evidence would show the offenses
   occurred over a period of four hours on the premises of the same hotel.
   [502-503]
At the trial of indictments charging sexual offenses, where the judge con-
   ducted a voir dire of each prospective juror on the subject of racial
   prejudice, his denials of a defense motion that counsel be allowed to
   conduct the voir dire, and of the defendant's request that additional
   questions be asked, were within his sound discretion. [503-505]

The judge at a criminal trial acted within his discretion in deciding that counsel were to be responsible for enforcing his order for the sequestration of witnesses, and the defendant demonstrated no prejudice to his case resulting from any alleged violation of the sequestration order. [506]

Failure of a prospective witness to appear and testify at the trial of four indictments, after the prosecutor announced in his opening statement that she would do so, was nonprejudicial to the defendant, since her absence resulted in a required finding of not guilty in the indictment as to which she was the complaining witness. [506-507]

INDICTMENT found and returned in the Superior Court Department on April 13, 1981.

The case was tried before *Travers, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Joan Rines Needleman* (*Andrew D. Nebenzahl* with her) for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. In April, 1981, a Worcester County grand jury returned four indictments against the defendant, Riley J. Pope, which charged indecent assault and battery on two complainants, assault with intent to rape a third complainant, and rape by unnatural sexual intercourse of a fourth complainant.

Pope had a trial on the indictments before a jury sitting in the Superior Court in Worcester County. The trial judge allowed the defendant's motion for a required finding of not guilty on one of the indecent assault and battery indictments when the alleged victim did not appear to testify. Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). The jury acquitted Pope on the other indictment for indecent assault and battery. The judge declared a mistrial and dismissed the indictment for assault with intent to rape when the jury could not return a verdict on this indictment. The jury found the defendant guilty on the rape indictment. The judge sentenced him to a term of from seven to twenty years at the Massachusetts Correctional Institution at Walpole.

The defendant appeals from his conviction of rape, and from the denial of his motion for a new trial. He also appeals from the denial of his posttrial motions for funds and for the appointment of a master. G. L. c. 261, § 27D. On appeal, the defendant alleges several errors by the judge which he claims, considered cumulatively, denied him due process of law and a fair trial, and thus warrant a reversal of his conviction. Specifically, the defendant claims that the judge improperly refused to enforce a witness sequestration order and erroneously denied his motions to sever the indictments, to permit an attorney-conducted voir dire of prospective jurors or to ask them specific questions, to conduct a pretrial evidentiary hearing on jury selection practices in Worcester County, and to allow the defendant funds to prepare a postconviction challenge to the juries which indicted and convicted him. The defendant also contends that the judge improperly denied his motion for a new trial, which was based on the alleged unconstitutionality of the jury selection procedures and the ineffectiveness of his trial counsel.[1] We transferred the case to this court on our own motion. We affirm his conviction and the denial of the posttrial motions.

We review only those portions of the evidence presented at trial which are relevant to the defendant's allegations of error. On January 17, 1981, the defendant, with his wife, attended a mini-convention of the Copper Craft Guild, a company which sells copper products for home use. Mrs. Pope was a member of the Guild. Following the day's business activities, the defendant and his wife attended the convention banquet. After the dinner, between 10 P.M. and 1 A.M., Pope and his wife went to the hotel lounge where they joined a group of other conventioneers. One conventioneer, Mrs. K, testified that while she and Pope were dancing with other people he pinched her on the buttocks several times.

When the lounge closed at approximately 1 A.M., the defendant and his wife returned to their room. They changed into swimming suits, went to the pool, and then returned to the

---

[1] The defendant is a black man, married to a white woman. The alleged victims are white women.

room at 2 A.M. The defendant then changed and went alone to a party at the room of Ms. P, another conventioneer.[2] At approximately 1:45 A.M., conventioneers Mrs. G and her husband conversed with the defendant on the balcony adjoining the room. When Mrs. G's husband left the balcony, Pope began rubbing his hands up and down her body. Mrs. G tried to push him away. Pope then took out his penis, put it in between her legs, and told her to "put it in." Mrs. G's husband returned to the balcony moments thereafter, and Pope backed off, laughing, to the other side of the balcony.[3]

Later Mrs. T, another Copper Craft Guild member, went to the pool area, accompanied by Pope. Pope watched her swim for a while and then told her that hotel security personnel wanted the pool cleared. Mrs. T resisted while Pope pulled her out of the pool by her arms. Mrs. T then proceeded up the back stairwell toward the party in Ms. P's room, and Pope followed. Pope grabbed her from behind as she went to knock on the room door. Pope forcibly dragged her down a hallway and onto a stairway landing where he beat her and forced her to perform fellatio. The chief security officer at the hotel observed Pope and Mrs. T, and when he told them that they had to leave, Mrs. T jumped up sobbing and clutched his arm. The officer noted that Mrs. T had been beaten about the face, and he took her back to Ms. P's room.[4]

---

[2] One indictment charged the defendant with indecent assault and battery on Ms. P. Ms. P never appeared to testify. It was on this indictment that the judge entered a required finding of not guilty.

[3] The jury were unable to reach a verdict on the indictment charging assault with intent to commit rape on Mrs. G. The judge declared a mistrial on this indictment and ordered it dismissed. The Commonwealth did not object.

[4] Barbara Libby, another conventioneer, testified that, after midnight on January 18, she saw Mrs. T in Ms. P's room with the security officer. She observed that Mrs. T was crying and had been beaten about the mouth.

Mrs. G's husband and Mrs. T's husband corroborated their wives' testimony concerning the time and sequence of the relevant events. Mrs. G's husband testified that he observed the defendant in the hotel stairwell landing at approximately 3:20 A.M. with "a girl kneeling over him with her head in his genital area." The indictment as to rape by unnatural sexual intercourse with Mrs. T resulted in a verdict of guilty. The fourth indictment, alleging indecent assault and battery on Mrs. K resulted in a verdict of not guilty.

1. *Denial of motion for a new trial*. The defendant contends that the judge erroneously denied his motion for a new trial based, inter alia, on the unconstitutional jury selection procedures in effect in Worcester County at the time of his indictment and trial, and his trial counsel's ineffectiveness in handling these claims.[5]

In deciding whether to grant a motion for a new trial, the question whether "justice may not have been done" at trial is left largely to the discretion of the judge who presided over the case. See *Commonwealth* v. *McCarthy,* 375 Mass. 409, 414 (1978) (citing Mass. R. Crim. P. 30 [b], 378 Mass. 900 [1979], and its predecessor, G. L. c. 278, § 29).

Before trial the defendant's trial counsel had submitted a motion to dismiss, based on the allegedly illegal grand jury selection process in Worcester County. At that time, trial counsel failed to file, with the motion to dismiss, an affidavit or memorandum of law, as required by the rules of criminal procedure. See Mass. R. Crim. P. 13 (a) (2) and (4), 378 Mass. 871 (1979).[6] Counsel presented no evidence in support of the pretrial motion, and the judge denied it based on the absence of the affidavit and because its allegations were unproved. In the motion for a new trial, the defendant claimed that trial counsel's incompetency in handling the jury selection issues deprived him of his right to effective assistance of counsel.

---

[5] The defendant also sought to raise other issues, not raised in the motion for a new trial, by means of the affidavit accompanying his motion. A ground for seeking a new trial must be raised in the defendant's motion, Mass. R. Crim. P. 30 (b), (c) (2), 378 Mass. 900 (1979). The issues in the affidavit also are argued by the defendant on appeal from his conviction. We consider them on the latter basis.

[6] Rule 13 (a) (2) of the Massachusetts Rules of Criminal Procedure (1979) provides in pertinent part: "A pretrial motion shall state the grounds on which it is based . . . . In addition, an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached."
Rule 13 (a) (4) of the Massachusetts Rules of Criminal Procedure (1979) provides in relevant part: "no motion to dismiss may be filed unless accompanied by a memorandum of law, except when otherwise ordered by the judge or special magistrate."

The defendant's appellate counsel submitted an affidavit in support of the motion for a new trial which merely restated the allegations presented in that motion. The affidavit did not present any facts within counsel's knowledge to substantiate these allegations except to refer to newspaper and magazine articles criticizing the composition and selection process of juries in Worcester County and other counties.[7]

After the hearing, in his memorandum and order, the judge detailed several of the misstatements and unsupported or unproven allegations in the motion for a new trial and the affidavit. The judge also concluded that the issue regarding jury selection could not be raised after trial. He therefore denied the defendant's motion. The judge ruled correctly. We have held that challenges to the composition of a grand or petit jury must be raised only by a pretrial motion to dismiss the indictment or the venire. See *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 91 (1973); *Commonwealth* v. *Aponte,* 391 Mass. 494, 510 n.23 (1984). See also Mass. R. Crim. P. 13 (c), 378 Mass. 871 (1979); Mass. R. Crim. P. 20 (a), 378 Mass. 889 (1979); G. L. c. 277, § 47A. A motion for a new trial cannot be utilized to launch a substantive factual inquiry into the merits of such claims. See *Commonwealth* v. *Underwood,* 358 Mass. 506, 510-511 (1970). Since the defendant presented no pretrial motion challenging the petit jury selection process[8] and no affidavit, memorandum of law, or other evidence in support of his motion to dismiss, based on the grand jury selection procedure, he may not seek a new trial based on these claims.

We also conclude that the judge correctly denied the defendant's motion for a new trial based on the claim of ineffective

[7] The defendant's appellate counsel asserted that she had been informed that no black person had ever been a member of a Worcester County grand jury. She presented no factual support for this contention. Also completely devoid of support were assertions that trial counsel's ineffectiveness prevented the discovery and presentation of witnesses at the defendant's trial.

[8] Trial counsel presented only an oral challenge to the petit jury selection procedure at the time he argued his motion to dismiss the indictments. Such a challenge does not satisfy the prescriptions of rule 13 that a pretrial motion must be in writing and served on the opposing party. See Mass. R. Crim. P. 13 (a) (1), (3), 378 Mass. 871 (1979).

assistance of counsel. In deciding whether the defendant demonstrated that he was denied his right to effective assistance of counsel in this Commonwealth, we must "determine 'whether there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, . . . whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.'" *Commonwealth* v. *Street,* 388 Mass. 281, 285 (1983), quoting *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We will not reverse a conviction on this basis unless the defendant shows "that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

The defendant argues that his trial counsel's failure to accompany his motion to dismiss with an affidavit or a memorandum of law as required by Mass. R. Crim. P. 13 (a) (2) and (4), and his failure to present any evidence in support of this motion, reflect a quality of professional conduct significantly less than that expectable from an "ordinary fallible lawyer." *Commonwealth* v. *Saferian; supra.*[9] Even if we were to assume this to be true, the defendant has failed to demonstrate any basis for the claim of illegality in the Worcester County jury selection procedures. For the defendant to establish a prima facie case of an unconstitutional grand jury selection procedure, he should have presented evidence showing that, during the time he was indicted, a nonrandom selection procedure was operating in Worcester County, which procedure resulted in a systematic, disproportionate underrepresentation of his protected class in the grand jury venires. See *Commonwealth* v. *Aponte, supra* at 504-505, 508-509;[10] art. 12 of the Massachusetts Declara-

---

[9] Pope's motion for a new trial also alleged that trial counsel was ineffective in failing to seek a motion in limine to exclude evidence of prior convictions in the defendant's criminal record and thus enable him to take the stand in his own defense. He has not argued this point in his brief. Hence, it is waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[10] In *Aponte,* we deviated from the "rule of exclusion" espoused by the United States Supreme Court which sets forth the prerequisites to a prima

tion of Rights. To prove that a petit jury selection process infringes the defendant's right, under the Sixth and Fourteenth Amendments to the United States Constitution, to have a jury representative of a fair cross section of the community, he must show "that the group alleged to be excluded is a 'distinctive' group in the community; . . . that the representation of this group in venires . . . is not fair and reasonable in relation to the number of such persons in the community; and . . . that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren* v. *Missouri,* 439 U.S. 357, 364 (1979). See *Taylor* v. *Louisiana,* 419 U.S. 522, 531 (1975). There is no such evidence in this record. Evidence which Pope offered in support of these claims included several newspaper articles and an excerpt from a study which discussed aspects of juror selection and the percentages of certain minority groups on jury panels in Worcester County, or in other unrelated urban areas. Such hearsay evidence is not competent to demonstrate the illegality of the jury selection system. Cf. *Sandrelli* v. *Commonwealth,* 342 Mass. 129, 139 (1961). In any event, the reports and studies produced only preliminary findings on juror selection, contained inadequate data on the percentage of minority group members in the area population, and gave no indication from where the samples were drawn, or the method by which the investigations were conducted. No significant right has been shown to have been lost by trial counsel's alleged ineffectiveness. Pope has not substantiated his claim by showing that trial counsel's alleged failure adequately to handle these constitutional claims denied him "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra.*

2. *Other allegations of error.* a. *Evidentiary hearing.* The defendant now claims that the judge erred in denying him a pretrial evidentiary hearing on the composition of the Worcester County grand jury. The defendant's trial counsel, however,

---

facie case of discrimination in a grand juror selection process. See *Castaneda* v. *Partida,* 430 U.S. 482, 494-495 (1977). We note that the principles established in *Aponte* are not applicable to the defendant. *Commonwealth* v. *Aponte, supra* at 510 n.23.

asked the court to consider his motion to dismiss the indictments pro forma.[11] Furthermore, the judge acted within his discretion in summarily denying the defendant's motion to dismiss when the motion was unaccompanied by an affidavit or a memorandum of law as required by Mass. R. Crim. P. 13 (a), and the defendant did not present an excuse for his failure to comply with this rule. See *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 337 (1983); Mass. R. Crim. P. 13 (a) (2) and (4). Cf. *Commonwealth* v. *Marchionda,* 385 Mass. 238, 243 (1982) (where counsel presented no evidence of illegality in petit juror selection process, judge erred in dismissing complaint).

b. *Motions for costs and to appoint a master.* The defendant contends that the judge erred in denying his posttrial motions for extra fees or for the appointment of a master to enable him to launch a postconviction challenge to the composition of the Worcester County jury which convicted him and the grand jury which indicted him. See G. L. c. 261, § 27C. The judge denied the motion for costs since it was directed toward an improper posttrial investigation of the juries which indicted and convicted the defendant, and because there was no affidavit of indigency attached to the motion as required by G. L. c. 261, §§ 27B, 27C.[12] The defendant appealed the judge's decision

---

[11] Prior to trial, when the defendant's counsel presented his motion to dismiss, he stated "that this motion requires, in the opinion of the defendant, an evidentiary hearing." He further stated, however: "I would indicate to the court that my client is not financially in a position to subsidize such an expenditure . . . to provide the necessary evidence in support of the motion. For those reasons, I am asking that the court consider this motion in light of the representations that are made to the court from counsel, and to consider the motion even though it is in a pro forma fashion."

Although the defendant also contends, on appeal, that the judge knew of his "indigency," when the pretrial motion was presented, the defendant privately retained his trial counsel and never filed an affidavit of indigency with the court before his trial. See G. L. c. 261, § 27B (party to action who files affidavit of indigency with clerk of court may request payment of court costs).

[12] Although the judge granted the defendant's postconviction motion to appoint appellate counsel, Rule 53 of the Superior Court (1981), the record does not show that the defendant ever filed an affidavit of indigency and sought payment of fees and costs as required by G. L. c. 261, §§ 27B and 27C.

to a single justice of the Appeals Court, who affirmed the judge's ruling. That decision, affirming the judge's denial of the motion for funds, is final under G. L. c. 261, § 27D. See *Commonwealth* v. *Lockley,* 381 Mass. 156, 159-160 (1980).

The judge subsequently denied the defendant's motion to appoint a master, based also on the ground that an investigation of the juries could not be initiated after the defendant's trial. The judge correctly denied this motion since the defendant improperly sought to use the extra funds and the master to challenge the juror selection procedures after his trial. See *Commonwealth* v. *Aponte,* 391 Mass. 494, 510 n.23 (1984); *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 91 (1973).

c. *Motion to sever.* The defendant maintains that the judge erred by denying his motion to sever the indictments for separate trials. The defendant further contends that his acquittal on the lesser indecent assault indictments did not negate the prejudice to his case which resulted from exposing the jury to the factual allegations which formed the basis of these indictments. The Commonwealth contends that the judge did not abuse his discretion by refusing to sever the charges where the nature of the offenses, as well as their time and location, were closely related. Moreover, the Commonwealth argues, the defendant's unsubstantiated claim of prejudice from accumulation of evidence is negated by his acquittal on one indecent assault indictment, the required finding as to the other indecent assault indictment, and the dismissal of the indictment for assault with intent to rape.

Two or more offenses are "related offenses" and may be joined in one trial "if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1), 378 Mass. 859 (1979). We have further defined related offenses which may be joined for trial as "separate acts with which the defendant is charged . . . closely related in time and space and . . . of the same general nature." *Commonwealth* v. *Cruz,* 373 Mass. 676, 690 (1977). Cf. *Commonwealth* v. *Gallison,* 383 Mass. 659, 672-673 (1981) (joinder of indict-

ments proper where evidence of criminal acts admissible to show defendant's state of mind). See Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979).

The four indictments, coupled with the Commonwealth's assertions of fact in its memorandum of law, charge that Pope committed various sexual offenses against four different women on the premises of the same hotel. The information before the judge, when he ruled on the motion to sever, was that the evidence would show that Pope engaged in this criminal conduct over a period of four hours during the early morning of January 18, 1981. The Commonwealth's factual allegations clearly describe a case involving an episode of criminal conduct of a sexual nature, the occurrence of which was closely related in location and time. The evidence expected from the four complainants would be admissible to show his state of mind and a course of specific criminal conduct during the four-hour period. Thus, the judge properly could have denied the defendant's motion to sever the offenses unless the defendant showed that undue prejudice would result from joinder of the indictments.

The defendant claims that joinder prejudiced him by permitting the jury to cumulate the evidence of the various offenses charged, thereby disabling them from considering separately the evidence of his guilt on each indictment. The defendant's claim of prejudice is negated by his acquittal on one indecent assault indictment and the dismissal of the other indictments of indecent assault and assault with intent to commit rape. See *Commonwealth* v. *Gallison,* 384 Mass. 184, 197 (1981).

d. *Individual voir dire.* The defendant argues that the judge denied him due process and his rights under G. L. c. 234, § 28,[13] by refusing to allow counsel to conduct the voir dire

---

[13] General Laws c. 234, § 28, as amended through St. 1975, c. 335, provides in relevant part: "For the purpose of determining whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision . . . to be made in whole or in part upon issues extraneous to the case, including . . . community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, *the court shall, or the parties or their attorneys may,*

and to ask prospective jurors questions concerning possible racial bias against a relationship between a black man and a white woman. The judge also erred, the defendant argues, by refusing to ask questions to determine whether any juror was predisposed to reject the concept of a defendant's presumption of innocence.

It appears, however, that the defendant's trial counsel failed to object either to the judge's denial of his request to conduct the voir dire or to the judge's denial of the defendant's request for additional questions. The Commonwealth points to this omission and, also, maintains that the conduct of the voir dire satisfied the requirements of due process and G. L. c. 234, § 28, since the judge asked sufficient questions to determine whether prospective jurors were prejudiced against a black person.

In this Commonwealth, a voir dire examination of prospective jurors customarily is conducted by the judge, and there is no requirement that an attorney be allowed to conduct the questioning. See *Commonwealth* v. *DiStasio,* 294 Mass. 273, 280 (1936); G. L. c. 234, § 28, second par. See also Mass. R. Crim. P. 20 (b) (2), 378 Mass. 889 (1979). The judge in this case acted within his discretion in refusing the defense counsel's motion to conduct the voir dire.

We have decided that, in a rape case involving a black defendant and a white complainant, a judge should grant the defendant's motion to conduct an individual voir dire, pursuant to G. L. c. 234, § 28, second par., to determine whether a juror is capable of making an impartial decision in the case. See *Commonwealth* v. *Sanders,* 383 Mass. 637, 640-641 (1981).[14] See also *Ham* v. *South Carolina,* 409 U.S. 524, 527

---

*with the permission and under the direction of the court, examine the juror* specifically with respect to such considerations, attitudes, exposure, opinions or any other matters . . ." (emphasis supplied).

[14] Before granting the motion for the individual voir dire, the judge should determine that the defendant's decision to obtain the voir dire was "knowing and voluntary"; made with the understanding that specific questions "may activate latent racial bias in certain prospective jurors or . . . may insult others without uncovering evidence of bias." *Commonwealth* v. *Lumley,*

(1973). Cf. *Rosales-Lopez* v. *United States,* 451 U.S. 182, 192 (1981). A judge has substantial discretion in deciding what questions to ask, and need not put the specific questions proposed by the defendant. *Commonwealth* v. *Walker,* 379 Mass. 297, 299-300 (1979). Where questions on the issue of racial prejudice are placed before the prospective jurors in clear and understandable language with follow-up questions where needed, a judge satisfies the requirements of due process and G. L. c. 234, § 28, in conducting the individual voir dire. See *Commonwealth* v. *Walker, supra.*

In the instant case, the judge conducted an individual voir dire of the prospective jurors to determine whether any one of them expressed racial prejudice against black persons. Prior to examining the jurors, he asked counsel to suggest questions of this sort to ask the jurors. The judge's refusal to ask the questions requested by defense counsel concerning attitudes toward an interracial couple, or on the concept of the presumption of innocence, was not error. The judge accepted, in substance, the defense counsel's other suggested questions concerning racial prejudice. He asked each juror, inter alia, whether, based on the circumstances of the case, he or she would be able "to render a fair verdict based solely upon [the] evidence"; whether he or she would be "more inclined to believe the Commonwealth witnesses because they were white"; and whether he or she had ever "been a member or whether [they] had] financially supported any organization which . . . foster[ed] hatred toward any racial group." [15] The questions asked by the judge were sufficiently clear and specific to focus a juror's attention on possible racial prejudice toward a black person, and therefore the denial of the defendant's requested questions was within the judge's sound discretion.

---

367 Mass. 213, 217 (1975). Prior to examining the jurors, the judge did question Pope on these matters and discerned that the defendant knowingly consented to the individual voir dire.

[15] The judge also asked each juror whether he or she, or any member of their immediate family, had ever been "a member of a law enforcement agency" or "a victim or an accused in a crime of a sexual nature."

e. *Sequestration order.* The defendant claims that the judge erred in instructing trial counsel that they were responsible for enforcing the sequestration order, and in refusing, at trial, to hear evidence that the Commonwealth's witnesses, prior to testifying, were engaging in conversation outside the courtroom.

The Commonwealth maintains that the judge did not abuse his discretion in leaving the enforcement of the sequestration order to counsel, even when it appeared that witnesses were violating the order during trial. Furthermore, as the Commonwealth correctly notes, the defendant did not object either to the judge's initially leaving enforcement of the order to counsel, or to his instruction that counsel advise the witnesses not to discuss their testimony with each other. Both the sequestration of witnesses and the remedy for violating a sequestration order lie within the sound discretion of the trial judge. See *Commonwealth* v. *Bianco,* 388 Mass. 358, 370 (1983); *Commonwealth* v. *Jackson,* 384 Mass. 572, 582 (1981). We think that the judge acted reasonably and within his discretion in deciding that counsel should be responsible for enforcing the sequestration order. When the judge was notified that witnesses were conversing, in violation of the order, he promptly allowed both the defense counsel and the prosecutor to leave the courtroom and to advise the witnesses not to discuss their testimony. The defendant has not presented any evidence describing the content of the witnesses' conversation, and thus he cannot demonstrate any prejudice to his case resulting from the violation of the sequestration order. Compare *Commonwealth* v. *Watkins,* 373 Mass. 849, 851 (1977) (even assuming judge's abuse of discretion in admitting testimony of witnesses who violated sequestration order, no prejudice to defendant ensued where the three witnesses testified about different events). There was no error.

f. *Reference to evidence never produced.* Finally, the defendant contends that reversible error resulted from the prosecutor's remark in his opening statement that Ms. P would be a prosecution witness, given the failure of this person to appear at trial and to testify. The fact that Ms. P never appeared can in no way be considered prejudicial to the defendant, since her ab-

sence resulted in a required finding of not guilty for Pope on the indictment wherein she was the complainant, and this information was relayed by the judge to the jury. Compare *Commonwealth* v. *Bearse,* 358 Mass. 481, 487 (1970) (prosecutor's unproved statement that defendant said he was going to kill victim irretrievably prejudiced defendant where other evidence did not warrant guilty verdict on murder charge).

Because we conclude that none of the defendant's allegations of error is meritorious, we affirm the judgment and the orders denying the defendant's posttrial motions.

*So ordered.*