NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-824

COMMONWEALTH

vs.

ROBERT R. MEDEIROS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of assault with a dangerous weapon in violation of G. L. c. 265, § 15B, assault and battery in violation of G. L. c. 265, § 13A (a), and breaking and entering in the daytime with intent to commit a felony in violation of G. L. c. 266, § 18. On appeal, the defendant argues that the judge erred in denying his request to ask individual jury voir dire questions about bias related to substance users claiming a lack of criminal responsibility.  We affirm.

Background.  We summarize the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-

677 (1979).  In 2023, the defendant lived in an apartment directly below the victim.  On the morning of January 20, 2023, the victim heard someone knocking "aggressive[ly]" on his door.  He looked through his peephole, and because he recognized the defendant as his neighbor, opened the door about halfway.  The defendant "seemed very upset and agitated," accused the victim of taking his phone and "hack[ing] into [his] Wi-Fi," pushed his way into the apartment, and swung a knife at the victim.  The defendant tried "to stab at" the victim in "an overhand stabbing motion with the blade facing down," and the victim testified that if he had not held the defendant's arm, the knife probably would have made contact with him.  The victim managed to push the defendant away from him and out of the apartment and yelled for help.  The police arrived at the scene after receiving a report of an attempted stabbing.

The defense at trial was a lack of criminal responsibility.  The defendant's sister testified to the defendant's early use of alcohol and other substances and that the defendant entered a treatment program "by his early 20's."  He was diagnosed with bipolar disorder in 2003.  Several months prior to the incident on January 20, 2023, the defendant began to exhibit more signs of "paranoia . . . getting progressively worse over time," in particular regarding the victim.  The defendant told his sister

2

that he believed the victim had installed "video cameras all over the place," and was "coming into [the defendant's] house . . . [and] planting devices, cameras, [and] video cameras." One of the police officers who responded to the incident testified that the defendant reported that the victim "had been spying on him," and that "he hacked his Wi-Fi router, or his phones."

Expert witnesses testified to the defendant's psychiatric conditions and substance use disorders. The defendant regularly took a variety of prescription medications as well as illicit drugs. One of the psychologists testified that, in his opinion, the defendant had a mental disease or defect that resulted in a lack of criminal responsibility, and that the defendant could not "think through things that he was doing," "distinguish between what's real and what's unreal," "realize the criminality of his actions," or "conform his actions to the requirements of the law."

Discussion. The defendant argues that the judge's failure to ask specific voir dire questions intended to investigate juror bias about addiction and substance use was an abuse of discretion and an error not cured by the jury instructions given at the conclusion of trial.

3

General Laws c. 234A, § 67A, requires judges to ask several categories of voir dire questions to potential jurors in criminal cases, "including questions regarding the presumption of innocence, the Commonwealth's burden of proof, and the absence of any burden on the defendant."  Commonwealth v. Espinal, 482 Mass. 190, 195 n.6 (2019).  Section 67A requires additional inquiry where "it appears that . . . a decision [may] be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons."  Commonwealth v. Steeves, 490 Mass. 270, 285 (2022), quoting G. L. c. 234A, § 67A.  However, "[a] judge has substantial discretion in deciding what questions to ask, and need not put the specific questions proposed by the defendant."  Commonwealth v. Pope, 392 Mass. 493, 505 (1984).  "A judge need not probe into every conceivable bias imagined by counsel."  Espinal, supra at 198.

"We review a trial judge's decisions regarding the scope of jury voir dire for abuse of discretion."  Commonwealth v. Tejada, 484 Mass. 1, 12, cert. denied, 141 S. Ct. 441 (2020).  "[A]n abuse of discretion occurs 'where we conclude the judge made a clear error of judgment in weighing the factors relevant

to the decision, such that the decision falls outside the range of reasonable alternatives.'"  Espinal, 482 Mass. at 198, quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

In deciding what individual questions would be presented to the venire, the judge considered requests by defense counsel to include questions designed to evaluate whether jurors were free from bias about mental health, suicidal ideation, and substance use.  After reviewing the proposed questions, the judge included questions regarding mental illness and expert testimony regarding mental health disorders, and juror experiences with suicidal ideation, but declined to include individual questions regarding attitudes toward substance use.  During individual voir dire at sidebar, the judge made inquiry of each juror to ensure that each would serve fairly, impartially, and objectively, and inquired specifically regarding any opinions about mental health that would prevent them from considering testimony from mental health providers in a fair and impartial manner or finding someone not guilty by reason of insanity. While defense counsel argued that additional, specific voir dire questioning was necessary "to establish whether [the jurors] genuinely underst[ood] that somebody can suffer from both a mental disease or defect and a substance-use disorder," and because "there are some people who might have a bias . . . that

5

if you use drugs, that is a moral failing," defense counsel did not provide any evidence beyond her own conjecture and opinion to support this contention when asked by the judge. "A defendant's 'bare allegation' that there exists a 'widespread belief' that could result in bias is not sufficient to cause us to conclude that the judge abused his discretion by declining to conduct voir dire on the issue." Espinal, 482 Mass. at 200.

In addition to the voir dire questioning that included specific questions designed to establish that the jurors could fairly and impartially assess the defendant's claim that he lacked criminal responsibility, the jury instruction of criminal responsibility included an explanation of the interplay between mental health, voluntary substance use, and criminal responsibility, and set out what was required for the Commonwealth to meet its burden and for the jury to determine if the defendant was criminally responsible. Moreover, the defendant makes no challenge to the correctness or completeness of the judge's detailed instructions. We conclude that the judge properly "inquire[d] individually of each potential juror, . . . whether the juror ha[d] any opinion that would prevent him or her from returning a verdict of not guilty by reason of insanity, if the Commonwealth fails in its burden to prove the defendant criminally responsible," Commonwealth v. Seguin, 421

6

Mass. 243, 249 (1995), cert. denied, 516 U.S. 1180 (1996), properly instructed the jury on the issues of substance use and its relation to criminal responsibility, and did not abuse his discretion in declining to ask the specific voir dire questions requested by the defendant.

Judgments affirmed.

By the Court (Massing,
 Sacks & Allen, JJ.[1]),

Clerk

Entered:  January 13, 2026.

---

[1] The panelists are listed in order of seniority.