## COMMONWEALTH *vs.* ROBERT D. RUDDOCK.

Barnstable. September 9, 1998. - November 2, 1998.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Instructions to jury, Argument by prosecutor, Capital case. *Intent. Insanity. Intoxication.*

At a first degree murder trial, the evidence warranted the judge's instruction that the jury could find the defendant criminally responsible if they found that the defendant consumed drugs "knowing or having reason to know" that he would lose either the substantial capacity to appreciate the criminality of his conduct or the substantial capacity to conform his conduct to the requirements of the law. [289-290]

At a first degree murder trial, the judge should have instructed the jury that, in deciding whether the defendant had reason to know about the consequences of his drug consumption, the jury should consider the question solely from the defendant's point of view and with regard to his mental capacity; however, no prejudicial error or substantial likelihood of a miscarriage of justice arose from the instruction on the issue as given, where the evidence suggested the application only of such a subjective standard. [290-292]

At a murder trial, the prosecutor's argument that the defendant made a belated fabrication to bolster his insanity defense was warranted by the evidence. [292]

At a murder trial in which the defendant raised the issue of lack of criminal responsibility, any impropriety in the prosecutor's references in closing argument to the defendant's prior psychiatric hospitalizations and releases was vitiated by the judge's instruction to the jury describing what happens to a defendant found not guilty by reason of insanity. [292-293]

INDICTMENT found and returned in the Superior Court Department on April 3, 1995.

The case was tried before *John A. Tierney*, J.

*Charles K. Stephenson* for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. On March 2, 1995, the defendant killed his mother in her home in Chatham. He appeals from a verdict that

he was guilty of murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty. We affirm the conviction.

Police officers, who responded to a concerned telephone call from the victim, arrived at the home in time to see the defendant complete the decapitation of his mother with a knife. Expert testimony, even from the Commonwealth, showed that the defendant had a mental disease at the time of the murder. There was conflicting testimony as to whether, despite his mental disease, the defendant had the substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law. See *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547 (1967).

1. The defendant's principal argument is that the judge erred in instructing the jury, in effect, that they could find the defendant criminally responsible if they found that the defendant consumed drugs "knowing or having reason to know" that he would lose either the substantial capacity to appreciate the criminality of his conduct or the substantial capacity to conform his conduct to the requirements of law.[1] The defendant objects specifically to the "having reason to know" language in the

---

[1]The full instruction reads as follows: "Now, I instruct you that if you find that the defendant had an underlying mental disease or illness but that despite such underlying mental disease he had the substantial capacity to appreciate the wrongfulness of his conduct and had the substantial capacity to conform his conduct to the requirements of the law; and if you further find by reason of and because of his voluntary use of drugs on the day of the crimes or a few days before the crimes he lost his substantial capacity to appreciate the criminality of his conduct or substantial capacity to conform his conduct to the requirements of the law; and if you further find that the defendant consumed the drugs knowing or having reason to know that such loss would result, you would then, having made all of these findings, be warranted in returning verdicts of guilty against the defendant if you found he participated in the crime."

Earlier in his instructions on criminal responsibility, the judge properly and repeatedly placed the burden on the Commonwealth to prove that the defendant did not have a mental disease or defect or that he had the substantial capacity both to appreciate the criminality or wrongfulness of his conduct and to conform his conduct to the requirements of the law. The judge followed almost verbatim the instruction set forth in the appendix to *Commonwealth* v. *Goudreau*, 422 Mass. 731, 737-739 (1996).

The finding language appearing in the early and middle portions of the quoted instruction misplaced the burden of proof in an insignificant way, viewing the instruction as a whole. That instruction in its latter portion properly placed the burden on the Commonwealth to prove that the defendant

instruction. He contends that the challenged language improperly sets forth an objective reasonable person standard.

There was evidence that the defendant smoked marihuana regularly and did so as late as the night before the killing, that his consumption of marihuana exacerbated his mental illness, and that the defendant knew that marihuana use exacerbated his condition. There was expert testimony that marihuana use could trigger a psychotic episode in a person who, like the defendant, had a major mental illness. A defense expert acknowledged both that the defendant had told him that his consumption of marihuana exacerbated his mental condition and that it was a reasonable hypothesis that the ingestion of drugs triggered the defendant's psychotic break. The defendant's sister, brother, and friend testified that the defendant's psychotic episodes appeared to be related to his use of marihuana.

The law is clear that the "defense" of the lack of criminal responsibility is not available to a defendant with a mental disease or defect who knows that his consumption of a substance will cause him to be substantially incapable of either appreciating the wrongfulness of his conduct or conforming his conduct to the requirements of law (or both). *Commonwealth* v. *Sheehan*, 376 Mass. 765, 769 (1978). See *Commonwealth* v. *Herd*, 413 Mass. 834, 839 (1992); *Commonwealth* v. *Brennan*, 399 Mass. 358, 363 (1987); *Commonwealth* v. *Shelley*, 381 Mass. 340, 350 (1980). We have taken the same position where, in the circumstances known to a defendant, the defendant had reason to know of the consequences of his drug consumption. See *Commonwealth* v. *Herd, supra* at 842. In this case, "[t]he instruction, as far as it went, was correct on this point." *Id.* There was evidence warranting such an instruction.

We have, however, in these circumstances characterized a defendant's reason to know as involving a subjective, not an objective, test. *Id.* We said in our *Herd* opinion that the standard is not an objective reasonable person standard. *Id.* We have also

knew or should have known that his drug consumption would cause his substantial lack of capacity to appreciate the wrongfulness of his conduct or to conform to the law. The use of the disjunctive word "or" is correct in instructing on the defendant's loss of the "defense" of insanity. In instructing on the Commonwealth's burden to prove a defendant's lack of criminal responsibility the conjunctive word "and" must be used. See *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547 (1967).

indicated that, where the evidence warrants it, an appropriate instruction along that line should be given. See *id.* The jury should be told to consider whether the defendant's mental condition might have interfered with his ability to understand what a normal person in the same situation would have reasonably understood. *Id.* The law relieves a person with a mental disease or defect of the consequences of his unlawful conduct if, because of the mental disease or defect, that person is unable to know right from wrong or is unable to control his unlawful conduct. See *Commonwealth* v. *Brennan, supra* at 362; *Commonwealth* v. *McHoul, supra* at 546-547. The fact that, in the same circumstances, a reasonable person not having a mental disease or defect would know right from wrong and could control his conduct is irrelevant when considering the question of a defendant's lack of criminal responsibility.

The judge did not tell the jury, as he should have, that, in deciding what the defendant had reason to know about the consequences of his drug consumption, the jury should consider the question solely from the defendant's point of view, including his mental capacity. Defense counsel did not request such an instruction either before or after the judge's charge, and at no time did the prosecutor seek clarification of this point which had been clearly established in *Commonwealth* v. *Herd,* 413 Mass. 834, 842 (1992).[2]

We do not read the judge's charge as telling the jury to determine what the defendant should have known based on an objective reasonable person standard. What the defendant had "reason to know" in context may have equally suggested the application of a subjective standard. There was testimony from the defendant's expert that, at the time the defendant used marihuana before the killing, he knew that marihuana had adverse consequences on his mental condition. The unsupplemented "reason to know" language was not significant in the circumstances of this case. We see neither prejudicial error nor a

[2]Defense counsel objected after the jury charge only to the reason to know language, language which was not inappropriate if properly explained. Defense counsel did not request that the explanatory language in *Commonwealth* v. *Herd,* 413 Mass. 834 (1992), be given to the jury. We shall assume that the defendant properly preserved the issue for appellate review in the normal course.

substantial likelihood of a miscarriage of justice arising from the challenged jury instruction.[3]

If there is evidence that a defendant knew or should have known that his consumption of drugs would cause him to lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, special jury instructions concerning criminal responsibility are required. See *Commonwealth* v. *Herd, supra* at 842. The judge's instructions must make clear that, if the jury does not find beyond a reasonable doubt that at the time of his drug consumption, the defendant knew of the effect of his drug consumption on his mental capacity, the defendant may argue his lack of criminal responsibility, unless, viewing the matter solely from the defendant's point of view, taking into account his mental condition at the time of any relevant drug consumption, he should have realized that his voluntary consumption of drugs would cause him to lack the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

2. The defendant challenges as unfair certain portions of the prosecutor's closing argument. Only two challenges, both subject to objection at trial, warrant discussion.

The prosecutor told the jury that the defendant's belief that his mother was Satan was fabricated months after the killing. The prosecutor was suggesting that the defendant made this belated fabrication to bolster his insanity defense. That argument was warranted by the evidence, although the conclusion urged was far from compelled.

The prosecutor's references to the defendant's past hospitalizations and releases concerned matters of only marginal relevance. The defendant argues that those references were designed to show that, if found not guilty by reason of insanity, the defendant would be released from confinement. The prosecutor made no direct statement to that effect, and such an inference from his argument is doubtful. The argument could more easily have been taken as an indication that the treating physicians did not view the defendant's mental condition as presenting a threat to others. In any event, any improper indication that

---

[3]In deciding, under G. L. c. 278, § 33E, whether an error in a jury instruction created a substantial likelihood of a miscarriage of justice, a new trial is called for unless we are substantially confident that, if the error had not been made, the jury verdict would have been the same.

the defendant might be released, if found not guilty by reason of insanity, was vitiated by the judge's instruction, based on *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975), describing what happens to a defendant found not guilty by reason of insanity. Of course, a prosecutor should not argue to the jury that, if found not guilty by reason of insanity, a defendant will be released.

3. We have considered the record pursuant to our duty under G. L. c. 278, § 33E, and see no basis for a reduction in the verdict or a new trial.

*Judgment affirmed.*