## COMMONWEALTH *vs.* GARY L. SCOTT.

Essex. September 13, 1999. - November 9, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Evidence,* Admissions and confessions, Credibility of witness. *Practice, Criminal,* Admissions and confessions, Motion to suppress, Voluntariness of confession, New trial, Assistance of counsel, Capital case.

At the trial of a murder indictment, there was no error in the judge's denial of the defendant's motion to suppress his confession, where the defendant made his statement after receiving proper Miranda warnings [354], and where the judge correctly ruled that the defendant's confession was voluntary [355-356].

There was no merit to a criminal defendant's assertion that his trial counsel was ineffective for his alleged failure to investigate and present a defense of lack of criminal responsibility or to have requested a jury instruction on lack of criminal responsibility [356-357]; nor was counsel ineffective for failure to make an opening statement [357], or for any other conduct at trial [357-358].

INDICTMENTS found and returned in the Superior Court Department on May 18, 1994.

A pretrial motion to suppress evidence was heard by *Charles M. Grabau,* J.; the cases were tried before *Margot Botsford,* J., and a motion for a new trial was heard by her.

*Robert S. Sinsheimer* for the defendant.

*Deirdre L. Casey,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree based on felony-murder[1] and extreme atrocity or cruelty, the defendant appeals. He also appeals from the denial of his motion for a new trial. Represented by new counsel on appeal, the defendant challenges the admission of certain statements in evidence. He also argues that he is entitled to a new trial because he was denied effective assistance of counsel. For the reasons stated in

---

[1]The defendant also was convicted of armed robbery.

this opinion, we affirm the defendant's convictions of murder in the first degree and armed robbery. We also affirm the order denying a new trial. We decline to exercise our power under G. L. c. 278, § 33E, in the defendant's favor to order a new trial on the conviction of murder in the first degree or to enter a verdict of a lesser degree of guilt.

1. *Facts.* A jury could have found the following. On April 11, 1994, the defendant, Gary Scott, checked into the Hampton Inn in Lawrence. During his stay, he consumed heroin and cocaine. He also attempted to commit suicide by overdosing on drugs, cutting his wrists, and electrocuting himself. After his suicide attempts failed, the defendant decided to rob the Hampton Inn to obtain more funds. He staked out the inn's security precautions on two successive nights and purchased a large knife at a local department store.

On April 21, the defendant went to the hotel lobby brandishing a knife. He demanded that the victim, the night manager, give him money. The defendant then led the victim to the lobby elevator. On the way to the elevator, the victim ran down the hall toward the exit doors. The defendant caught the victim and stabbed him several times. The defendant took the victim back to his room and tied him up. The defendant left the room, walked to a nearby restaurant, and called a taxi to take him to an area in Lawrence known to be frequented by drug users. The victim died from the stab wounds in the defendant's motel room.

2. *Motion to suppress.* After the defendant's arrest, he gave a detective a statement concerning the murder. Prior to trial, the defendant filed a motion to suppress all statements he made to police officers. The judge issued a memorandum denying the defendant's motion to suppress. We summarize the judge's findings of fact on that motion.

On April 24, at approximately noontime, the defendant was arrested in Lynn for the murder of Randy Cote, the night manager at the Hampton Inn in Lawrence, on April 21. Before he said anything to the police, the defendant was advised of the Miranda warnings.[2] The defendant asserted his right to remain silent. On arrival at the Lynn police station, the defendant was

---

[2]The officer in his testimony at the hearing on the motion to suppress omitted the warning that anything the defendant said to the police could be used against him in court.

again advised of the Miranda warnings. The defendant again exercised his right to remain silent.

At approximately 3 P.M., the defendant was brought to the Lawrence police station, where he was placed in a holding cell. At approximately 5 P.M., the defendant called out to an officer who was passing through the cell area that he wanted to confess to a murder. The officer immediately informed a supervisor of the defendant's request. Approximately one and one-half hours later, the officer returned to the cell area to deliver food to the detainees and the defendant again expressed his desire to confess. The officer informed the defendant that he was not involved with the investigation, but that he would communicate with an officer who was investigating the Lawrence murder.

Subsequently, that officer and his supervisor went to the defendant's cell. After ascertaining that the defendant wanted to talk, the supervisor again advised the defendant of the Miranda warnings. The defendant stated that he understood each of these rights. The officer then asked the defendant to wait for the investigating officers.

Two investigating officers then arrived at the defendant's cell and identified themselves. They asked the defendant whether he wanted to speak to them, and the defendant said that he did. They asked the defendant if he wanted an attorney, and the defendant said that he did not. The officers brought the defendant to an office upstairs. The judge found that one of the officers "recited the Miranda rights to [the defendant], by reading each right individually from a form. After reading each sentence, [the officer] asked [the defendant] if he understood. [The defendant] responded in the affirmative each time, and he signed the form." The defendant then confessed to an unrelated murder in Pawtucket, Rhode Island.[3] Thereafter, the defendant confessed to the murder at the Hampton Inn.

During the confession, which lasted approximately three hours and fifteen minutes, one of the officers took fourteen pages of notes while the defendant spoke. The defendant was permitted to take four or five breaks to use the bathroom, to smoke cigarettes, to eat, and to drink coffee. The defendant

---

[3]The victim was the defendant's stepfather. The defendant's sister had been arrested for the Pawtucket murder. The defendant was concerned about his sister because, according to the defendant, she had not been involved in the murder. He "stated that he wanted to confess . . . in order to free his sister from custody in Rhode Island."

gave his statement in narrative form. The defendant controlled the sequence of his narrative. He was interrupted only when the officers asked a few questions to clarify the narrative. After the defendant finished speaking, he was asked to review the officer's notes. The defendant did so and made a few changes. He initialed each change and each page, and then signed the last page of the statement.

The defendant asserts that admission of his statements in evidence violated the United States Constitution and the Massachusetts Constitution. We do not agree. "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990).

A. The defendant claims that the officer who gave the first Miranda warnings did not recite the warnings in their entirety. See note 2, *supra*. The defendant claims that this officer's testimony proves that the first Miranda warnings were not recited correctly at the time the defendant first heard them. From this, the defendant concludes that all his statements must be suppressed. The defendant's argument ignores the fact that, prior to making his statement, the defendant was twice advised of the Miranda warnings.

Assuming, without deciding, that the first officer failed to advise the defendant of the full Miranda warnings, see note 2, *supra*, the defendant was not harmed by the omission. After the first warning, the defendant exercised his right to remain silent. Then, before the defendant made his statement, other officers on two separate occasions advised the defendant of the Miranda warnings. The defendant also read and signed a card that had the warnings printed on it before he gave his statement. Thus, any error was cured by the subsequent warnings. All the later warnings preceded the defendant's statement.

B. Next, the defendant complains that the government did not scrupulously honor the defendant's right to remain silent. The defendant again presses his claim that he did not receive proper Miranda warnings, and adds that any warning that he did receive came too late. As discussed above, the defendant was properly advised of the Miranda warnings prior to making a statement. The defendant's argument that any such warning was too late has no merit because, as discussed above, the defendant was advised of the Miranda warnings immediately before he gave his statement.

C. The defendant also asserts that the government failed to prove beyond a reasonable doubt that his confession was voluntary. The Commonwealth. bears this burden. In determining whether a statement was voluntary, we consider the totality of the circumstances. *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995). The judge considered factors relevant to the totality of the circumstances, including "whether promises or other inducements were made to [the defendant] by the police . . . [the defendant's] age, education and intelligence . . . his experience with the criminal justice system . . . his physical and mental condition . . . whether he was under the influence of drugs or alcohol . . . and the details of the interrogation, including the recitation of Miranda warnings . . ." (citations omitted). After a review of these factors, the judge found that the defendant made his statement voluntarily. There was no error.

We accept the findings of the judge absent error. The defendant claims that he could not have rationally decided to make a voluntary statement because he was overwhelmed by his concern for his sister. Concern for a loved one may, in certain circumstances, render a confession involuntary. *Commonwealth* v. *Berg*, 37 Mass. App. Ct. 200, 206 (1994) (i.e., unfair and illegitimate police tactics, psychological coercion, threats, etc.). The record is devoid of any unfair tactics, illegitimate police conduct, or psychological coercion. "The presence of one or more factors suggesting a statement may have been made involuntarily is not always sufficient to render the statements involuntary." *Commonwealth* v. *Selby*, *supra* at 664. The defendant's concern for his sister is not enough to tip the balance where all other factors indicate that the defendant made his statement voluntarily.

Further, the defendant claims that his statement could not have been voluntary because he was told that Rhode Island officials would not be notified of his arrest unless and until he confessed to the murder at the Hampton Inn. The judge discredited this testimony by the defendant. "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Harmon*, 410 Mass. 425, 431 (1991), quoting *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). The judge chose to believe the testimony of the officers over that of the defendant. The judge's decision not to credit the defendant's testimony is well within the judge's

discretion. The record does not support the defendant's claim that his statement was involuntary.

3. *Motion for a new trial.* We turn to the issues raised by the motion for a new trial. The defendant filed a timely notice of appeal and a motion to expand the record. A single justice of this court treated the motion to expand the record as a motion for a new trial and remanded it to the Superior Court. The judge denied the motion. The defendant filed a timely notice of appeal from that order. The appeal from the denial of the motion for a new trial has been consolidated with the direct appeal of the conviction of murder in the first degree.

In his motion, the defendant claimed that trial counsel was ineffective because he made several errors before and during trial. In reviewing each claim of the ineffectiveness of trial counsel, we consider whether there was an error in the course of the trial and, if there was, whether that error was likely to have influenced the jury's conclusion. *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). The burden is on the defendant to demonstrate that the errors were likely to have unfairly influenced the jury's verdict. *Commonwealth* v. *Plant*, 417 Mass. 704, 715 (1994).

A. *Failure to raise the issue of criminal responsibility.* The judge made the following findings on the issue of criminal responsibility and defense counsel's actions. Trial counsel reviewed the entire record in his possession, obtained additional hospital records regarding the defendant's prior inpatient psychiatric admission, and spoke with the defendant multiple times. Trial counsel also talked with a psychiatrist specializing in substance abuse and its effects. The psychiatrist reviewed materials provided by trial counsel and interviewed the defendant. Trial counsel and the psychiatrist then discussed the defendant's mental condition. At the hearing on the motion for a new trial, trial counsel "recalled that the information [the psychiatrist] gave him about the defendant was not helpful to a defense based on diminished capacity or mental impairment."

The defendant asserts that trial counsel nevertheless should have requested an insanity instruction as a result of the defendant's suicide attempts and substance abuse. An attempt at suicide, even when coupled with other self-destructive behavior, is not sufficient to support an insanity instruction. See *Commonwealth* v. *Mattson*, 377 Mass. 638, 643 (1979). In further support of this contention, the defendant highlights a reference

to the defendant's "disease" that is in a hospital discharge summary written approximately two months before the murder at the Hampton Inn. However, the "disease" is not discussed in the report; in fact, it is unnamed in the report. This single passing reference is not sufficient to support an instruction on criminal responsibility. Trial counsel, consistent with his strategy, requested and received a strong charge regarding the defendant's substance abuse and its effect on the defendant's ability to have the requisite intent.

Trial counsel believed "that the defendant's best . . . defense lay in convincing the jury that second degree rather than first degree murder was the appropriate verdict, or possibly (but not probably) manslaughter." Trial counsel's closing argument set forth the defendant's claim that, due to his consumption of drugs and alcohol, he did not have the mental capacity needed to convict him of murder in the first degree. In the circumstances, trial counsel's failure to request an instruction on lack of criminal responsibility does not constitute ineffective assistance of counsel.

The defendant also suggests that trial counsel's investigation was inadequate because trial counsel did not obtain a written report from the psychiatrist who examined the defendant. There is no merit to this contention.

B. *Other claims.* The defendant also complains of trial counsel's failure to make an opening statement. Failure to make an opening statement is not sufficient to support a claim of ineffective counsel. *Commonwealth* v. *Cohen*, 412 Mass. 375, 391 (1992). "Defense counsel's waiver of an opening statement has been held to be 'trivial', a 'tactical decision', and a 'matter of professional judgment', as well as 'within the realm of trial strategy.' " *Id*, quoting *United States* v. *Salovitz*, 701 F.2d 17, 20-21 (2d Cir. 1983), and cases cited. Trial counsel made a tactical decision not to make an opening statement because he did not plan to offer any witnesses. He put the defendant's case in through cross-examination of the Commonwealth's witnesses. That is a reasonable tactical decision.[4]

The defendant asserts that trial counsel's failure to object when the prosecutor referred to the defendant's statement as a

---

[4]Assuming, arguendo, that trial counsel's omission of an opening statement constituted error, the defendant has failed to carry his burden of showing that the error was likely to have influenced the jury's verdict. *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998).

"confession" is error requiring reversal. The prosecutor did not use the term "confession" until after the statement had been read aloud. At that point, the jurors were aware that the statement was, indeed, a confession. In short, the jury had "ample and more direct evidence" of the defendant's confession than the prosecutor's merely labeling it as such. *Commonwealth* v. *Carter*, 423 Mass. 506, 515 (1996). The prosecutor's use of the term "confession" rather than "statement" at that point was not prejudicial. The defendant has not shown that the use of the word "confession" was likely to have unfairly influenced the jury's verdict.

The defendant states that trial counsel failed to unify the defense with a theme. We do not agree. Faced with overwhelming evidence of guilt, trial counsel decided to focus on convincing the jury that the defendant should be convicted of a lesser degree of guilt due to the consumption of drugs and alcohol. That was an underlying theme and a reasonable choice. The defendant cannot second guess that strategy after an unfavorable determination by a jury.

None of the complaints raised by the defendant supports his claim alleging that trial counsel was ineffective. We add that trial counsel must exercise judgment and discretion in proceeding with a defense. "A list of subjective critiques of defense counsel's decisions, absent a showing that errors likely affected the jury's conclusions, is insufficient to support an ineffective assistance claim." *Commonwealth* v. *Scott*, 428 Mass. 362, 369 (1998). The defendant has not pointed to errors which were likely to have influenced the jury's conclusions. *Commonwealth* v. *Ruddock, supra* at 292 n.3.

4. *Relief pursuant to G. L. c. 278, § 33E.* We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E, and conclude that the defendant is not entitled to a new trial or entry of a lesser degree of guilt.

The judgments of murder in the first degree and of armed robbery are affirmed. The order denying the defendant's motion for a new trial is affirmed.

*So ordered.*